[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12669
Non-Argument Calendar

_____

D. C. Docket No. 05-00392-CR-J-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAWAN LEQUINT MYERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 22, 2008)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Jawan Lequint Myers appeals his conviction on one count of possession with

intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(C). Myers contends that the district court erred by denying his motion to suppress evidence seized at his residence. He argues that the district court failed to engage in the second part of a two-part inquiry that required the court to determine whether a prior illegal search in his backyard tainted the consent by his wife, Ruby Myers, to search his residence.

## I.

In February 2005 in preparation for the Super Bowl, which was to be held in Jacksonville, Florida, the Jacksonville FBI office requested help with security from nearby FBI S.W.A.T. teams. The Atlanta team responded and checked into the Jacksonville Holiday Inn. When the team went to their van on morning of the Super Bowl, the agents discovered that someone had broken into it and had stolen four sniper rifles, two M-4 fully automatic rifles and two Springfield .45 caliber pistols.

In early September 2005 the burglary division of the Jacksonville Sheriff's Office received a tip that Kedrick Ewing had stolen the guns. The tipster told the police that Ewing might have sold the guns to his cousin, a drug dealer that the tipster knew as "Red." The tipster provided Red's address and told the police that Ewing often sold stolen items to Red, including a stolen go-kart. He also stated

2

that the go-kart was located behind the house. The police later found out that there was an outstanding warrant for Ewing's arrest.

On September 9, 2005, four law enforcement officers—FBI Special Agents James Dougal and Graham Grafton and Detective Kipple and Officer Brown from the Jacksonville Sheriff's Office—went to the address that the tipster had provided to find Ewing and to gather information about the stolen guns. When they arrived Detective Kipple went around the back of the house, Agent Grafton went to the left front of the house, and the other two officers went to the front door. Officer Dougal testified at the suppression hearing that this approach was used for their safety so that all of the exits from the house would be covered.

While at the back of the house, Detective Kipple entered the fenced yard, lifted the corner of a tarp, and saw a go-kart. He went back to the front of the house and told Agent Dougal that there was a go-kart in the backyard. Officer Brown, who was dressed in his police uniform, then knocked on the front door. Ruby Myers cracked open the door to talk to Brown. Brown explained that he and the other officers were looking for Ewing and were investigating the theft of several guns and a go-kart, and he asked Ruby if anyone else was in the home. Ruby said no, but when Brown saw someone moving inside the house, Ruby said her "boyfriend" was there, Jawan Myers, whom she also later identified as her

3

husband.

Agent Dougal then asked Ruby to come outside to speak with him, and Myers also came out to the enclosed front porch in front of the house to speak to Officer Brown. Ruby walked out to the driveway with Dougal, who identified himself as an FBI special agent and told her that there was a stolen go-kart in her backyard and that he was investigating the theft of FBI guns. He asked for her permission to search her house to see if they could find any of the stolen guns, and she agreed, saying that it "wouldn't be a problem, sure."

Agent Dougal then went to his car to get a consent to search form, and he brought it back and gave it to Ruby. He then read her the form while she held it. Ruby asked Dougal if she could ask her husband before she signed the form, and he said yes, so she walked to the enclosed front porch and handed the form to Myers. Myers read the form and handed it back to Ruby, telling her that it was okay. Ruby then signed the form and later explained that she consented to the search because she didn't think the officers were going to find anything.

After she signed the form, Agent Dougal and the other officers searched the house. The officers found powder and crack cocaine, marijuana, guns unrelated to the FBI theft, and a FBI firearms manual. Ruby said she had no knowledge of the drugs, and Myers was arrested but she was not. After his arrest Myers was

indicted for possessing with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841, and possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g).

Myers moved to suppress the drugs and guns, contending that Detective Kipple's search of the backyard violated the Fourth Amendment and that the illegal search tainted Ruby's consent to search the home. The district court held a hearing and denied the motion. In doing so the court assumed that Detective Kipple's initial search of the backyard violated the Fourth Amendment but ultimately concluded that, under the totality of the circumstances, Ruby's consent to search her home was voluntary.

The district court dismissed the firearms charge on the government's motion and then conducted a bench trial of the drug charge on stipulated facts. It found Myers guilty and sentenced him to 84 months imprisonment. Myers appeals and contends that the district court erred by denying his motion to suppress. According to Myers, Detective Kipple's initial entry and search of the fenced yard did, as the district court assumed, violate the Fourth Amendment. Myers contends that because of this illegal search the district court was required to engage in two separate inquiries in deciding the motion to suppress. The district court, Myers says, was required to examine both whether Ruby's consent was voluntary, and if

5

so, whether her consent had been tainted by Detective Kipple's illegal search of the backyard. Myers contends that Ruby's consent was tainted by the earlier illegal search and that the district court committed reversible error by failing to decide the taint issue.

## II.

In United States v. Delancy, 502 F.3d 1297 (11th Cir. 2007), this Court held that courts are "required to conduct two separate inquiries where a consent to search follows prior illegal activity by the police." Id. at 1308. "First, a court must determine whether the consent was voluntary. Second, the court must determine whether the consent, even if voluntary, requires exclusion of the evidence found during the search because it was the 'fruit of the poisonous tree'—the product of an illegal entry." Id. "[T]he voluntariness of consent is only a threshold requirement; a voluntary consent to search does not remove the taint of an illegal seizure. Rather, the second requirement focuses on causation . . . ." Id. (quotation omitted). "This two step approach is mandatory, and the government bears the burden on both issues." Id. (citing United States v. Robinson, 625 F.2d 1211, 1219 (5th Cir. 1980)).

In Robinson, the former Fifth Circuit rejected a magistrate judge's finding that the defendant's voluntary consent to a search removed the taint of an illegal

stop and remanded the case because the magistrate judge had failed to engage in the proper legal analysis. Robinson, 625 F.2d at 1219. In denying the motion to suppress, the magistrate had stated, "This Circuit has previously held that a voluntary consent to a search will remove the taint of an illegal arrest. Similarly, advising a defendant of his right to refuse his consent to a search constitutes a sufficient intervening factor to remove the taint of a prior Fourth Amendment violation." Id. at 1220 (quotation and citations omitted). Because the magistrate judge had "merely satisfied himself that Robinson's consent to the search was voluntary," this Court held that the magistrate judge had applied the incorrect legal standard. We explained:

> Contrary to the magistrate's apparent view of the law, a voluntary consent to search does not remove the taint of an illegal seizure. Rather, voluntariness is merely a threshold requirement. The "causal connection" between the illegal seizure and the consent to search must be independently examined, utilizing the factors set out in Brown[1] in light of the policies to be served by the [F]ourth [A]mendment exclusionary rule.

Id. (footnote omitted). We remanded the case to the district court to make the appropriate factfindings and conclusions because "it is the district court's duty to make findings of fact in the first instance on the attenuation issue." Id.

In its order denying Myers' motion to suppress, the district court described

---

[1] Brown v. Illinois, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 2261-62 (1975).

7

the issues as "whether an Officer's 'search' of the . . . backyard was legal and whether the consent given to the subsequent house search was voluntary." The court assumed that Detective Kipple's initial search of the backyard was illegal and went on to examine whether, under the totality of the circumstances, Ruby's later consent to search her home was voluntary. The district court concluded that Ruby's consent was voluntary, but it did not go on to decide whether her consent was tainted by what it had assumed to be an illegal search. It should have done so. See Delancy, 502 F.3d at 1308; Robinson, 625 F.2d 1220. Because the district court failed to determine whether Ruby's consent to search the residence was tainted by a prior illegal search, we vacate and remand to the district court to decide the issue in the first instance.[2] See Robinson, 625 F.2d at 1220.

**VACATED AND REMANDED.**

---

[2] On remand the district court may wish to decide, rather than assume, whether Detective Kipple's initial search of the backyard was illegal. However, that is a decision we leave to the district court.