[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10018
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00392-CR-J-25HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAWAN LEQUINT MYERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 6, 2009)

Before EDMONDSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Jawan Myers was convicted for possession with intent to distribute cocaine

and cocaine base. He appeals his conviction, contending that the district court erred in denying his motion to suppress evidence of the guns and drugs seized in a search of the home where his wife, Ruby Myers, lived.[1] The district court held that although an earlier search of the backyard was illegal, that search did not taint the validity of the later search of the house, which is where the guns and drugs were found.

## I.

This is the second appeal involving the search of Ruby's home. The facts of this case are more fully discussed our first opinion, United States v. Myers, No. 07-12669 (11th Cir. Aug. 22, 2008). The facts relevant to this appeal are as follows. At approximately nine o'clock one morning, a team of law enforcement officers—Detective Kipple and Officer Brown from the Jacksonville Sheriff's Office and FBI Special Agents Dougal and Grafton— arrived at Ruby's house to investigate a tip from an informant that Myers was storing guns stolen from an FBI van, as well as a stolen go-cart, there. The police did not have a search warrant for the house or probable cause to arrest Myers at that time.

Detective Kipple approached the house through the gated backyard and saw

---

[1] Ruby testified that Myers was not living at her house at the time of the search because they were having marital problems. Myers did keep some of his things at the house, he stayed there occasionally, and the utility bill for the house was in his name.

an object under a black tarp. He lifted the tarp and saw a go-cart, which he suspected was the stolen go-cart identified by the informant. Before the officers approached Ruby's front door, Detective Kipple told the others that he had found a go-cart in the backyard.

Detective Brown then walked up on the sun porch and knocked on the door, and Ruby answered. Eventually, Myers came out onto the porch and also began speaking with the officers. Agent Dougal asked Ruby to step outside with him. He told Ruby that they had found a go-cart, which they believed was stolen, in the backyard. Ruby said that she did not know the go-cart was stolen and stated that she "didn't care" about it.

Agent Dougal then asked Ruby whether she would consent to a search of the house. Ruby wanted to talk with Myers before consenting, and she and Agent Dougal returned to the porch so Ruby could talk to Myers. On the porch, Agent Dougal showed Ruby a written consent form and read it to her. Myers also read the form and told Ruby that it was okay to sign it. The form stated that Ruby had the right to refuse consent and that she had the right to stop the search at any time. Ruby signed the form and the officers searched the house.

At the suppression hearing, Ruby testified that she understood her rights under the form and signed it. She also testified that she consented to the search of

3

the house because she did not think that there were any drugs in the house and she did not think the police would find anything. She was mistaken. The search of the house revealed crack cocaine, powder cocaine, and several guns.

## II.

"Review of a district court's denial of a motion to suppress is a mixed question of law and fact." United States v. Delancy, 502 F.3d 1297, 1304 (11th Cir. 2007). The district court's fact findings are reviewed only for clear error, while its interpretation and application of the law are reviewed de novo. Id.

The parties do not challenge the district court's ruling that the search of the backyard was illegal. Therefore, "[f]or consent given after an illegal seizure to be valid, the Government must prove two things: that the consent is voluntary, and that the consent was not a product of the illegal seizure." Id. at 1308 (quotation omitted). "This two step approach is mandatory, and the government bears the burden on both issues." Id. In our earlier opinion, we held that the district court's analysis of the legality of the search was incomplete because although it found that Ruby's consent to the search was voluntary, it did not determine whether her consent was tainted by the earlier illegal search of her backyard. See Myers, No. 07-12669, slip. op. at 8. On remand, the district court determined that Ruby's consent was not tainted by the earlier illegal search and therefore again denied

4

Myers' motion to suppress. We now review the district court's decision about the second step: "[w]hether the illegal entry tainted [Ruby's] consent so that the evidence found after the consent should be excluded." Delancy, 502 F.3d at 1309

Myers contends that Ruby's consent was tainted by the illegal search of his backyard. To determine whether the consent was tainted, we consider "whether the consent was sufficiently an act of free will to purge the primary taint of the unlawful invasion, or, alternatively, whether the causal connection had become so attenuated as to dissipate the taint." Id. We have identified three non-exclusive factors to determine whether consent is tainted by prior illegal conduct: (1) temporal proximity of the consent to the illegal conduct, (2) intervening circumstances, and (3) "the purpose and flagrancy of the official misconduct." Id.

Applying those factors here, we agree with the district court that Ruby's consent was not tainted. We begin with the temporal proximity. Ruby consented to the search approximately ten minutes after she was told about the go-cart that Detective Kipple found in the backyard. That is close in time. As noted in Delancy, however, we should be "mindful of the specific facts of this case." Id. at 1311. In Delancy, we concluded that the impact of a short temporal proximity was softened because the woman who consented to the search had not been handcuffed or detained and the officers were polite and non-threatening. Id. The same is true

5

here, and we therefore conclude, as we did in <u>Delancy</u>, that "timing is not the most important factor." <u>Id.</u>; <u>compare</u> United States v. Santa, 236 F.3d , 666–67, 678 (relying on temporal proximity in concluding that the search was tainted where the police obtained the consent only a few minutes after they had illegally entered the defendant's home, handcuffed him, and forced him to the ground).

The second factor cuts strongly against finding Ruby's consent tainted because she reviewed and signed a consent form, which advised her of her constitutional rights. Ruby testified that Agent Dougal read the form to her and she understood that she had the right to refuse consent to the search. Myers also reviewed the form and told Ruby it was okay to sign it. That is a "thorough notification" of her constitutional rights under the Fourth Amendment and "constitutes an important intervening circumstance" between the illegal search of the backyard and her consent to the search of the house. <u>Delancy</u>, 502 F.3d at 1311.

The third factor also cuts against a tainted consent. The district court found that the illegal search of the backyard "was not the cause of [Ruby's] consent" because she did not care about the go-cart, stolen or otherwise. It also found that she consented to the search because she did not think there were drugs in the house and, therefore, did not think the police would find anything. Those fact findings

6

are not clearly erroneous.  Based on those findings, we agree that the officers did not exploit the discovery of the go-cart to obtain Ruby's consent.

We therefore conclude that the illegal search of the backyard did not taint Ruby's later consent to the search of her home.  The district court properly denied Myers' motion to suppress.

**AFFIRMED.**